ROLLINS, *Appellant*, v. McINTIRE.

1. **Land Title : TOWN PLAT, FAILURE TO ACKNOWLEDGE AND RECORD.** The failure to acknowledge or record a plat of an addition to a town held not to affect the title of a purchaser of a lot, it appearing that the survey of the addition had been made and that a plat of the same was filed or deposited, prior to the sale of the lot, in the recorder's office where it remained for many years, although it was lost and could not be produced at the time of the trial.

2. **Estoppel.** One claiming title to land under an executory contract is estopped to deny its validity.

3. **Town Plat : INNOCENT PURCHASER.** The fact that a town plat was not recorded will not defeat the title of one purchasing a lot in ignorance of such want of record.

4. **Executions, Law of 1849 Relating Thereto.** Under the act of

Rollins v. McIntire.

1849 (Laws 1849, p. 92), in relation to executions, an execution could issue after five years from entry of judgment only by leave of court, and such leave must be shown affirmatively to support a sheriff's sale under an execution issued while that act was in force, upon a judgment so entered five years previously.

5. **Land Title**: ACT OF FEBRUARY 27, 1874: INSTRUCTION. The claimant, at the date of the act of February 27, 1874 (R. S., 1879, sec. 3225), requiring persons claiming land in possession of another to bring suit therefor within one year from the approval of the act, his predecessors in title within thirty years, and the persons in possession are the only persons within the purview of said act, and an instruction involving said act which requires the jury to find that persons, other than those within its purview, had not paid taxes on the land as stated in the act, is erroneous.

6. —— : ——. Whether or not the claimant and his predecessors in title paid the taxes for thirty years preceding the passage of said act of 1874 is a matter of proof not of presumption.

7. —— : ——. The non-payment of said taxes need not be directly proved, but may be inferred from facts and circumstances bearing on said question.

8. **Lawful Possession**: STATUTE. The plaintiffs' possession held a lawful one, under the facts of this case, within the meaning of said act of 1874.

*Appeal from Audrain Circuit Court.*—HON. ELIJAH ROBINSON, Judge.

REVERSED.

*Ira Hall* for appellant.

(1) The judgment on the facts in evidence should have been for plaintiff on the equity count. (2) The sheriff's deed to Harrison was valid and effectual to convey Fenton's equitable title of the premises to Harrison. Although the judgment was obtained in 1840, the statute of 1849 authorized the issuance of execution thereon. Laws 1849, p. 92, art. 18, secs. 1 and 2; *Bolton v. Landsdown*, 21 Mo. 399. It was not necessary

for plaintiff to show the order of court granting leave. The presumption is that the clerk did his duty and did not issue without authority. It would have been ground only for quashing the execution on motion of defendant if issued without leave of court. *Long v. Joplin Mining Co.*, 68 Mo. 431-2; *Perkins v. Quigley*, 62 Mo. 498; *Whitman v. Taylor*, 60 Mo. 137. It could not be attacked collaterally anyhow, plaintiff being a stranger to the execution. *Cabel v. Grubbs*, 48 Mo. 353; *Whitman v. Taylor*, 70 Mo. 127, 137. (3) That there was a plat of the ground including the block in question is shown by the order of the county court upon its commissioner to have the same done and the actual sale of blocks therein by numbers, and the reservation of the block in the northwest corner for a graveyard; and, also, by the testimony of Clark and Allison, who saw it. Clark says it was in a till in the office of the circuit clerk, who was ex-officio recorder, where it was required to be "deposited." See title Town Plats, R. S., 1835; *Ibid.*, R. S., 1845, p. 1056. Besides both parties claimed their title from the same source. (4) Defendant bought with notice of plaintiff's claim. *Digman v. McCollum*, 47 Mo. 372. (5) The court should have given the instruction asked by plaintiff as to possession. Plaintiff built a substantial post and plank fence in 1871, which, in the usual course of nature, would have lasted fifteen years at least. *Bartlett v. Draper*, 23 Mo. 407; *Draper v. Shoot*, 25 Mo. 197; *Schultz v. Lindell*, 30 Mo. 310-19; *Leeper v. Baker*, 68 Mo. 405. (6) Plaintiff's instruction number four, as to payment of taxes by the Fentons, should have been given, showing no assessment to them of any real estate for thirty consecutive years prior to February 27, 1874, is pretty good evidence that they gave in none and was *prima facie* evidence against them that they paid no taxes on any and consequently none on that in suit; that they paid no attention to it at all. See 1 Greenl. Evid., sec. 48. (7) The instructions given for de-

fendant were erroneous. The first is in direct conflict with instruction (b) given for plaintiff as to showing non-payment of taxes. And it is wrong in requiring it to be proven to and found by the jury, that neither the city of Mexico nor defendant paid any taxes upon the property during the thirty consecutive years next preceding the twenty-seventh of February, 1874, (a) because, whilst the city of Mexico owned it, it was exempt from taxation. R. S., 1845, sec. 2, Ch. 147. (b) The proof is that it was sold to James E. Fenton at a sale by the parties in whom the title was and upon whom the obligation to pay taxes rested during that period, viz: the Fentons. Plaintiff was not obliged to show that defendant paid no taxes within that period, for his claim and title dates only from November, 1881, the date of his deed. *Vance v. Corrigan*, 78 Mo. 94. Defendant's second instruction as to possession is misleading and improper, wherein it says "the extent of the land must clearly appear." Actual occupation of a whole tract of land claimed by one in good faith under a deed to the whole, gives possession to such occupant, the real owner not being in posses; sion of any part of it. *Turner v. Hall*, 60 Mo. 271 - *Bradley v. West*, 60 Mo. 33; *Schultz v. Lindell*, 30 Mo. 310. The third instruction for plaintiff was wrong. *Mansfield v. Pollock*, 74 Mo. 186. Defendant's fourth instruction was wrong ; there was no presumption in law of payment of taxes by them as therein declared.

*Macfarlane & Trimble* for respondent.

(1) The evidence failed to show that the land in controversy, viz: block seven in the county addition to Mexico was the same land as block seven reported by Commissioner Black as having been sold to James E. Fenton and to which the court ordered Commissioner Craddock to make a deed. *Forrister v. Scoville*, 51

Mo. 268. (2) The sale by Commissioner Black to
Fenton, if one was made, was contrary to the statute
(R. S.. 1835 chap. —, p. 599) and was illegal, and under
said sale Fenton did not acquire a right which a court of
equity would enforce, and he had no equity which could
be sold upon execution. Sedgwick Con. Stat. 71;
*Downing v. Ringer*, 7 Mo. 585; *Hamilton v. Sculls*, 25
Mo. 165; *Howell v. Stewart*, 54 Mo. 404; *Saratoga Bank*
*v. King*, 44 N. Y. 87; *Nellis v. Clark*, 20 Wend. 37;
*Fenton v. Howe*, 35 Mo. 409; *Tracy v. Talmage*, 19 N.
Y. 26; *Brooks v. Martin*, 2 Wall. 70; *Planters' Bank*
*v. Main Bank*, 16 Wall. 483; *Skinner v. Henderson*,
10 Mo. 205; *Mason v. Kitt*, 21 Mo. 392. (3) If Fenton
had a vendible interest in the block in question, the
judgment, execution sale and deed made by the sheriff
were not sufficient to pass such interest to Harrison, the
purchaser. R. S., 1845, ch. 90, p. 622, secs. 1 to 7; Laws
1849, art. 18, p. 92; *Givens v. Campbell*, 20 Iowa, 79;
*White v. Clark*, 8 Cal. 513; *Hay v. Hays*, 46 Ill. 343;
*Ranson v. Williams*, 2 Wall. 313; *Finch et al. v.*
*Martin*, 19 Ill. 110; *Williams v. Peyton*, 4 Wheaton,
79; *George v. Middow*, 62 Mo. 549. (4) Fenton's con-
veyance in 1859 to James D. Fenton passed the title free
from the pretended equitable title acquired by Harrison
by virtue of the sheriff's deed. Harrison's equity, if he
had any, did not appear of record. *Willingham v.*
*Hardin*, 75 Mo. 429, and authorities cited. (5) The pre-
tended sale by Commissioner Black of block seven was
contrary to law and was void until executed by deed to
Fenton by the county in 1856, and until such deed was
made the property belonged to the county and was not
subject to taxation. R. S., 1845, sec. 2, p. 928; R. S.,
1879, sec. 3225. The land not being subject to taxation,
for thirty years next before the twenty-seventh of
February, 1874, there could not have been such default
on the part of defendant and those under whom he claims,
as would operate as a forfeiture of his title. (6) Di-

Rollins v. McIntire.

vesting title from one and vesting it in another, as provided by section 3225, Revised Statutes, 1879, is an extraordinary method of passing title and in such case the party claiming should and will be required to prove every fact made necessary under the law to entitle him to the benefits of the law. *Yankee v. Thompson*, 51 Mo. Mo. 234; *Abbott v. Dolan*, 49 Mo. 302; Sedgwick Con. Stat. 302. (7) The rules applicable to titles acquired by adverse possession should not be applied under this law. Lawful possession must mean actual and not constructive possession. So actual possession of a part of a tract will not entitle the occupant to claim the whole. (8) The evidence shows the whole block was fenced and the conflict in the evidence was as to the condition of the fence in February, 1875. It was admitted that most of the fence was gone. Plaintiff's evidence tended to prove that there were, at places, posts and planks remaining, while defendants' evidence tended to prove that nothing was left, and between the two there was some evidence that there were posts and planks on one side only. Hence the propriety of the instruction that the extent (possession) of the land must clearly appear. (9) Defendant's third and fourth instructions were proper. If improper they were not misleading. The instructions all taken together placed the issues fairly before the jury. (10) The power of attorney from Fenton to Reddington was properly admitted, but whether it was or not could make no difference. An outstanding title was sufficient. (11) The payment of taxes subsequent to 1874 was not a fact relevant to the issues in the case, and the exclusion of testimony of payment of taxes down to the trial was proper.

RAY, J.—The petition in this case contains two counts; the first of which seeks to divest the defendant of the legal title to block seven, in the county's addition to the town of Mexico, in Audrain county, Missouri,

and vest the same in the plaintiff, on the ground that the defendant took the deed under which he claims and holds the property in question, with full notice and knowledge of the prior rights and equities of the plaintiff thereto. To this count there is, also, a prayer for general relief. The second count is in the nature of an action of ejectment, and is in the usual form. The answer to both counts is a general denial. There was a separate trial on each of these counts; that on the first count, or equity branch of the case, was had before the court at the October term, 1881, and resulted in a general finding for the defendant, and judgment accordingly; that on the count in ejectment was afterwards had before a jury, in February, 1882, and resulted in a verdict for the defendant and judgment accordingly. After unsuccessful motions for new trials, the plaintiff appealed the case to this court.

It may be premised that, at both trials, a large mass of testimony, documentary and oral, was introduced, which need not here be set out in detail. It may be added, also, that most of this testimony was introduced by one party or the other, on the trial of both counts. It may be remarked, also, that it is objected by defendant, that the evidence fails to identify the block in question; or to show that the county addition to the town of Mexico had been surveyed, and the plat or map thereof filed or deposited in the recorder's office in said county, prior to the sale of said block in 1839, hereafter mentioned. This objection, however, is, we think, not well taken. Indeed, it is only hypothetically suggested in defendant's brief, which, we think, virtually concedes the point. At all events, it clearly appears from the various orders of the county court, and other documentary evidence from the same source, that said survey, in point of fact, had been made, and a map or plat thereof filed or deposited in the recorder's office, prior to said sale, where it remained for many years. It is true, this map

or plat appears never to have been acknowledged or recorded, as it should have been, but was seen and kept in the office for many years, although lost or not to be found in the office, at the date of these trials. J. P. Clark, who was circuit clerk and ex-officio recorder of said county in 1845, and for some years thereafter, testifies that he frequently saw the old plat of the county addition in the office, among its files. With these remarks we pass that objection, without further notice, as being unsupported by the evidence and without merit.

As to the first count, or equity branch of the case, there seems to be no dispute as to the other facts touching the controlling question in the case, which may be summarized as follows: In 1839, as shown by the record, one James E. Fenton bought said block at the county commissioner's sale, and paid for the same then, or prior to 1847, but got no deed for the same at the time. The record also shows, as above stated, that the plat of said addition to said town had never been acknowledged or recorded, as required by the statute then in force, but it nowhere appears that said Fenton had any notice of that fact. Both parties claim title under this sale to Fenton, as follows: In 1840, a judgment was duly rendered in the Audrain circuit court against said Fenton and others, on which, in 1855, an execution was issued and levied upon said block, as the property of Fenton, and at the sale thereof, had in October, 1855, one William P. Harrison, became the purchaser and received a sheriff's deed therefor, which was duly recorded, in said county, in May, 1856.

The plaintiff derives his title under said Harrison, by proper conveyance and judicial proceedings, which were completed in 1871; whereupon he took actual possession thereof, and proceeded to enclose the same with a substantial fence at a cost of some fifty dollars, which remained on the premises until some time in

the year 1874 or 1875, when the fence was removed by divers trespassers, at different times, without the knowledge or consent of plaintiff. It also appears that plaintiff, in compliance with an order of the city authorities, also, built a plank walk on one side of said block and that he paid one-half of the taxes on said block, from the time of Harrison's purchase in 1855 to 1871 ; after which he paid all the taxes on the block, down to the time of the trial. In June, 1856, after Harrison had made his said purchase at sheriff's sale and received his deed therefor, and the record thereof, the county of Audrain, by its commissioner, made a deed to said Fenton by which it conveyed said block and thereby quit-claimed to him all its rights to the same. This deed, it appears, was made to said Fenton, solely on account of his said purchase at said commissioner's sale in 1839. After this, in June, 1859, said James E. Fenton conveyed said block by quit-claim deed to his son, James D. Fenton, which was also duly recorded. After that, some time about 1877, the defendant took possession of said block, claiming to have a deed therefor from said James D. Fenton of that date. This deed, however, as the record shows, when introduced in evidence on the trial of the second or ejectment count, bore date November 11, 1881, and had never been recorded.

On this state of the record two questions arise, which are duly presented and argued by counsel for the respective parties. It is claimed for appellant, Rollins, that his vendor, Harrison, by said purchase at sheriff's sale became the owner of the equitable title to said block, and as such entitled to demand and have from said county a conveyance of the fee therefor, and that said James E. Fenton and James D. Fenton and this defendant afterwards accepted said deeds, under which they claim with knowledge of plaintiff's equitable right to the premises. *Digman v. McCollum*, 47 Mo. 372.

For the defendant it is insisted, (1) That at the

date of said Harrison's purchase at sheriff's sale, said James E. Fenton had no valid or vendible interest in said block, by reason of his said purchase thereof in 1839. (2) That if he had such interest, said execution sheriff's sale and deed thereunder were invalid and inoperative to pass and transfer the same to said Harrison, and that said plaintiff has acquired no interest therein, equitable or otherwise, and is not entitled to the relief asked for. In the case of *Downing v. Ringer*, 7 Mo. 585, "when a person sold a town lot before a plat of the town was made out, acknowledged and deposited in the recorder's office, as prescribed by the third section of the act concerning towns, the contract was held absolutely void. That case was a suit on a promissory note given for the purchase money for said lot, and where no plat had thus been made out, acknowledged and recorded, as required by statute. In the case of *Mason v. Pitt*, 21 Mo. 391, it was said: "The failure of the proprietor of a town to record a plat of it will not prevent the title from passing to a purchaser. The statute imposes no penalty on the vendee." This case was an action of ejectment for lot forty-eight in the town of Winston, in which the plaintiff relied upon and offered a deed for said lot from the proprietors of said town, the plat of which had not been recorded, and the court, in speaking of the *Downing case*, 7 Mo. 585, use this language: "The case of *Downing v. Ringer*, 7 Mo 585, decides that the proprietor of a town, the plat of which is unrecorded, cannot recover the purchase money for a lot sold in such town, inasmuch as the penalty imposed on the vendor for such an act implies a prohibition, and the courts cannot aid him in doing that which is forbidden by law. If a vendee of a lot in such town, knowing that the plat is unrecorded when he purchased, should bring an action to enforce a specific performance of the contract of sale, he might be met with the statute. In this case there is nothing showing that the vendee was affected with any notice

of the fact that the plat was unrecorded, and without such notice he is an innocent purchaser. But the answer to this whole matter of the plat being unrecorded is, that the contract is executed, the title has passed, and the law imposes no penalty on the vendee.

The case at bar, however, in some particulars, is somewhat unlike both these cases. At the date of Harrison's purchase of Fenton's interest in said block, the contract betweeen the county and Fenton remained executory only. No deed had then been made, but the county afterwards in execution of said contract, and without any new consideration therefor, makes a deed to Fenton, by which it is conceded that the legal title passed, and the question is, whether it passed subject to the equities of Harrison, under whom the plaintiff claims, and whether the plaintiff is entitled to recover the same from defendant, who claims and holds the same under and by virtue of said deeds from said county to said James E. and said James D. Fenton aforesaid. Did the subsequent conveyance by the county validate the prior executory contract by which Fenton held, when Harrison bought at sheriff's sale, and thus entitle plaintiff to recover? Or, waiving this question, can the defendant, who also holds under a deed based solely on said prior executory contract, call in question its validity? Can he claim title thereunder, and at the same time deny that any title existed thereby? We think not. If he cannot, this disposes of the question whether the elder Fenton had any valid or vendible interest in said block, at the time of Harrison's purchase at executor's sale. But if it does not, the fact remains that Fenton is not shown to have known that the town plat was unrecorded. *Mason v. Pitt*, 21 Mo. 391.

The only question, therefore, remaining is, whether the execution, sheriff's sale and deed to Harrison, were valid and sufficient to pass and transfer the interest of Fenton to Harrison to the block in question. If the

execution in question had been issued under the law, as it stood prior to 1849, or as it has remained since the first of May, 1856, there can be no question, we think, that it would have been invalid and the sale thereunder a nullity. *George v. Middough*, 62 Mo. 551. By these laws the lien of a judgment continued three years from date of judgment, and execution may issue at any time during the existence of the lien, without *scire facias* to revive the same. After that, the plaintiff may, at any time, within ten years, sue out a *scire facias* to revive a judgment and lien, but after the expiration of ten years from the rendition of the judgment no *scire facias* shall issue. The revival of the lien by *scire facias* continues for two years only, subject to be revived again, as above, so that in no event, under the law as it stood prior to 1849, and subsequent to the revision of 1855 (which took effect the first of May, 1856), could an execution on a judgment be issued after the expiration of twelve years from the rendition of the judgment. See R. S., 1845. "Judgment and Decrees," and R. S., 1855, same head; 62 Mo. 551. The law of 1849 (Session Acts, page 92, art. 18, under the head of Execution, secs. 1 and 2), however, changed the law on the subject, as follows: "Section one. Writs of execution for the enforcement of judgments, as now used, are modified in conformity to this act, and the party in whose favor judgment is given may, at any time within five years after the entry of judgment, proceed to enforce the same by execution." "Section two. After the lapse of five years from the entry of judgment, an execution may be issued only by leave of the court, on motion, with notice to the adverse party. Such leave shall not be given unless it be established by the oath of the party, or other proof, that the judgment or some part thereof remains unsatisfied and due. If any part appears to have been satisfied or paid, it shall be endorsed on the execution, and the remainder only collected."

Under these provisions, it would seem that the *absolute* bar against issuing executions, after ten years, or at most twelve years, no longer existed, but in lieu thereof it is provided, after the lapse of five years from the entry of judgment, an execution may be issued *only* by leave of the court, on motion, with notice to the adverse parties, etc. This leave of the court, it would seem, may be granted, at any time, after five years from the date of judgment, upon notice, motion and proof, required by this act. If this be the correct meaning of the act of 1849, and we think it is, there was no *absolute* bar against issuing an execution on the judgment in 1855, although the judgment was rendered in 1840 ; *provided* the motion, notice and proof required by the act of 1849 was given and made. See *Bolton v. Lansdown,* 21 Mo. 399. Whether that was so in this case does not affirmatively appear, there being no proof, one way or another, on this point.

For the plaintiff it is insisted that, in the absence of such proof, it will be presumed that the clerk of the court did his duty, and did not issue said execution without such leave of the court so made, and in support of this position cites a number of authorities. *Perkins v. Quigley,* 62 Mo. 498 ; *Waddell v. Williams,* 50 Mo. 216. It is also further insisted for plaintiff, that as an execution, under the act of 1849, might lawfully issue under the conditions specified in the act ; the issuance of one without complying with those conditions is, at most, a mere *irregularity* not rendering the same void, and cannot be taken advantage of in a collateral proceeding like this. That the defendant in the execution, on motion, at the proper time, might have the execution and sale thereunder set aside for irregularity ; but that if he made no such motion the sale thereunder could not be objected to by a stranger to the execution, in this collateral proceeding. In support of this position, also, a number of authorities are cited and relied on. *Cabell v.*

*Grubbs*, 48 Mo. 363 ; 27 Mo. 244 ; Freeman on Executions, secs. 29–43 ; *Whitman v. Taylor*, 60 Mo. 127 ; *Norton v. Quimby*, 45 Mo. 338 ; *Draper v. Bryson*, 17 Mo. 71.

On the other hand, defendant claims that the motion, notice and proof and leave of the court, required by the act of 1849, after five years from date of judgment, are, in effect, a substitute for the *scire facias* required by the old law, and constitute a necessary link in plaintiff's chain of title, the burden of showing which rests on him, and that, in the absence of such proof, affirmatively made, the plaintiff cannot recover.    That, under the old law, the *scire facias* was a matter of record, and necessarily appeared in plaintiff's chain of title, but under the law of 1849 the motion, notice and proof not being of record, could only appear by proof *aliunde* the record, and this proof devolved upon the plaintiff and was as essential to a recovery as any other link in his chain of title ; and that the issuance of an execution under the law of 1849, without complying with its provisions and conditions, is not, as claimed, a mere irregularity, rendering the sale voidable at the pleasure of the defendant in the execution, but a matter of substance, without which the sheriff's sale and deed thereunder are nullities and pass no title ; and in support of these propositions cites and relies on the following authorities : *Ransom v. Williams*, 2 Wall. 313 ; *Williams v. Peyton*, 4 Wheat. 77 ; *Givens v. Campbell*, 20 Iowa, 79 ; *White v. Clark*, 8 Cal. 512 ; *George v. Middough*, 62 Mo. 551

It may be conceded that there are respectable authorities on both sides of the last, or second proposition, hereinbefore stated and described.    But, after a careful examination of the authorities cited on both sides, as well as others bearing on the same point, we are satisfied that the weight of authority is decidedly in favor of the position contended for by the defendant.    There is a marked distinction between the case at bar and the cases in 50 Mo. and 62 Mo., *supra*, referred

to by plaintiff.    There the act of issuing an execution is
a mere *ministerial* one, and the *clerk alone* is charged
with the duty of determining when the conditions pre-
scribed by the statute have been complied with.    Not so
in the case at bar, under the act of 1849.    The second
section of that act provides, as we have seen, that
"after the lapse of five years from the entry of judg-
ment, an execution may be issued, *only by leave of the
court*, on motion, with notice to the adverse party ; such
leave shall not be given, unless it be established by the
oath of the party, or other proof, that the judgment, or
some part thereof remains unsatisfied and due. If any part
appears to have been satisfied or paid, it shall be endorsed
on the execution, and the remainder only collected."
The requirements of this act are clearly in the nature of
"judicial proceedings," implying an inquiry into the
fact, and a finding by the court, together with its leave
or judgment that an execution may issue for the bal-
ance only thus appearing to be due.    Without such
leave or judgment, affirmatively appearing in a case like
this, under the act of 1849, the execution in question
must be held a nullity, and the sale void, and consequently
no title passed thereby.    It results from this that there
was no error in the action of the trial court as to the
first count, or equity branch of this case, and its judg-
ment in that behalf is affirmed, with the concurrence of
all the judges.

On the trial of the count in ejectment, the plaintiff,
as shown by the record, sought recovery of the block in
question by virtue of the legal title thereto acquired by
operation of the act of the twenty-seventh of February,
1874, now section 3225 of the revision of 1879, in con-
nection with the facts in proof.    That act is as follows :
" Any person claiming any real estate in the lawful pos-
session of another, and which has not been in possession
of such claimant, or any one under whom he claims, for
thirty consecutive years, and on which neither he, nor

those under whom he claims, has paid any taxes for all that period of time, and the equitable title to which has emanated from the government more than ten years, shall, within one year from the approval of this act, bring his suit to recover the same, and in default thereof, he shall be forever barred, and his right and title shall, *ipso facto*, vest in such person."

At this trial, as before stated, a large mass of testimony was introduced by the respective parties, but, for the purpose of this case, it is sufficient to state only that portion of it essential to and bearing on the material points in issue. It appeared in evidence, as shown by the record, that Mansfield and Smith, in about 1837, obtained a patent from the government for the tract of land of which the block in question is a part. That some time in 1837, they conveyed the same by deed of general warranty, to the county of Audrain, which afterwards, in 1839, by its commissioner, sold the block in question to one James E. Fenton, but made no deed therefor till 1856 ; that said Fenton in 1859, by deed, conveyed the same to James D. Fenton, who, by deed bearing date the eleventh of November, 1881, conveyed the same to this defendant, who had taken possession of said block in 1877, and was still in possession at the time of the trial, claiming title by his said deed. It also appeared that in the spring of 1871, the plaintiff, under his purchase of said block at the partition sale and the sheriff's deed thereunder, peaceably took the actual possession thereof, and inclosed the same with a good and substantial fence, which, in the ordinary course of things, ought to have lasted ten or fifteen years, and which in point of fact, remained there for several years, after which, as shown by the evidence, it was pulled down and taken away by divers trespassers, at different times, without the knowledge or consent of the plaintiff. It also appeared, that at and prior to the time plaintiff thus took possession of and fenced the block in question, it was and had been

vacant, and prior thereto never was or had been in the actual possession of any one at any time. On these two last points there was no conflict in the evidence.

Precisely when these several trespassers removed the fence does not clearly appear. On this point the evidence was conflicting. That for the plaintiff tended to show that it remained there up to and after the twenty-seventh day of February, 1875, although considerably dilapidated, especially towards the latter part of that period. On the part of the defendant the evidence tended to show that it entirely disappeared before the twenty-seventh of February, 1875 (most likely some time during the year 1874). On this point the jury might well have found either way and it would have been no cause of reversal. On the part of the plaintiff, the evidence tended to show that James E. Fenton, in about 1841, became and remained insolvent, and that he left that county about that time, leaving various debts and judgments unsatisfied, and shortly afterwards left the state, and never returned, or became solvent, and that said James D. Fenton, about the same time, also left the state and never returned. The plaintiff also testified that he paid one-half of all the taxes on the premises, from the time of Harrison's purchase in 1855 or 1856, down to his purchase under partition sale in 1871, and that thereafter he paid all the taxes down to 1876, and offered to prove, also, that he had paid them to the time of the trial.

John Howell, a witness for plaintiff, testified that he lived in Mexico ; that he was an abstractor ; that he had examined carefully the assessor's books from 1843 to 1874, and that he found that no land of any kind was assessed to James E. Fenton, or James D. Fenton ; that he found no assessor's books for 1855 or 1856. In 1857, it was to W. P. Harrison ; in 1860, to Harrison and Rollins ; in 1861, not on the books ; in 1862, to Harrison ; in 1863, 1864, 1865, 1866, 1867, to Harrison's estate ; in 1868, to

Harrison & Brother; in 1869, it is assessed, but not plainly written, and cannot tell to whom ; in 1870, to James S. Rollins ; did not find block seven, county addition, on tax books for 1857. Plaintiff then showed payment of taxes on block seven, by tax books, in 1858, 1863, 1867 and 1868, by Harrison's administrator. Plaintiff also gave in evidence tax receipts, showing payment of taxes by Harrison for 1856 and 1860, and by Rollins in 1870, 1871, 1872, 1873, 1874, 1875 and 1876 ; and then offered to show further, by tax receipts, that he had paid the taxes on the block in question from 1876 down to the time of the trial, in February, 1882, but on motion of defendant this offer was excluded, to which action of the court the plaintiff at the time excepted. Block seven seems not to have been assessed at all prior to 1857. The plaintiff also testified that no suit was ever brought against him for the possession of said lot. On this point there was no contradiction or conflict in the evidence.

Besides the above testimony, there was also other evidence, on the part of plaintiff, tending to show that no claimant of said block, nor any one of those under whom he claims, for thirty consecutive years next before the said twenty-seventh day of February, 1874, had paid any taxes on said block for all that period of time. There was no pretense that this defendant had paid any taxes on it at any time.

On this state of facts the court gave, for the plaintiff, instructions marked *a* and *b*, as follows :

"*a*. If the jury believe from the evidence in the case that the county court of Audrain county, Missouri, had the land donated or conveyed to said county, by the deed of Smith & Mansfield, read in evidence by plaintiff, surveyed or laid off in blocks designated by numbers, and had a map or plat thereof made and deposited in the recorder's office of said county, showing the length and

width, and number of each, and amongst them was block seven, the land in suit, and that at a sale of such blocks in the year 1839, ordered by said county to be made by its commissioner, Isaac Black, James E. Fenton bought said block, and that said Fenton at the time, or shortly after, or before 1847, paid for the same ; and further believe from the evidence, that at the time said block seven was levied upon and sold as said Fenton's property, as described in the sheriff's deed to W. P. Harrison, given in evidence by plaintiff, said block and its location was known to persons familiar with the ground, and could be easily found by persons so desiring, then by the sheriff's deed, the subsequent deeds, title bond and records and admissions of defendant on the trial of the case, pertaining to said block in evidence, on part of plaintiff, plaintiff became the equitable owner of said block, and vested with the right to such legal title thereto as was conveyed by Commissioner Craddock's deed to James E. Fenton, and by him to James D. Fenton ; and if the jury further find from the evidence that plaintiff, in or about the year 1871, took peaceable possession of said block seven, and fenced the same under his purchase at partition sale, and his sheriff's deed in partition, given in evidence by him, and continued such possession up to and including the twenty-seventh of February, 1874, then plaintiff was, on such date, in the lawful possession of said block."

"*b*. The jury are instructed that if they believe from the evidence, that on and before the twenty-seventh day of February, A. D., 1874, plaintiff was in the lawful possession of the block of land in suit, and continued in possession of the same for one year or more from and after said date, and further believe, from the evidence, that James E. Fenton bought said block at a sale of same by Audrain county, and that neither said James E. Fenton nor James D. Fenton, had been in possession of said block for thirty consecutive years next before said

twenty-seventh of February, 1874, and that neither of said Fentons have paid any taxes upon said land for said thirty consecutive years next before February 27, 1874, and that neither of' said Fentons brought suit against plaintiff to recover said property within a year from and after the twenty-seventh of February, 1874, then the verdict will be for plaintiff."

The court refused the following instructions asked by plaintiff:

"1. In order for the jury to find possession of the block or land in suit to have been in plaintiff during the period from the twenty-seventh of February, A. D., 1874, up to the twenty-seventh of February, 1875, it is sufficient that you believe from the evidence that plaintiff had a fence about it, or other erection or erections upon it during such time, and it makes no difference that such fence may have been in a bad state of repair by reason of the planks being broken down or torn off in many places by the unlawful acts or trespasses of third parties."

"2. The jury are instructed that the deed executed by S. A. Craddock, read in evidence by defendant, did not convey the interest held by Audrain county to the block in question, and it and subsequent deeds consequently gave no title to defendant to the block in question."

"3. The jury are instructed that under the deed made by D. Reddington to defendant, defendant acquired no more than the naked legal title to the land in question, which, if the jury find the facts to be true, as required in instruction numbered one, belongs of right to plaintiff."

"4. If the jury believe, from the evidence, that there was no real estate whatever assessed to James E. Fenton or James D. Fenton during the period of thirty consecutive years next before the twenty-seventh day of

February, 1874, then there being no affirmative evidence on the part of defendant of any such payment of taxes on the property by either of said Fentons, from and under whom defendant claims, you are warranted in presuming and finding that said Fentons paid none."

To such refusal of the court to give the same, plaintiff duly excepted.

The court gave the following for defendant:

"1. The court instructs the jury that upon the pleadings and evidence in this case plaintiff has shown no title to the premises which will entitle him to a verdict unless it be on account of adverse possession of the premises, and on that ground you cannot give him a verdict, unless you believe, from the evidence in the case, the following propositions to be true:

"That plaintiff, James S. Rollins, was in the actual, visible and lawful possession of the premises sued for from the twenty-seventh day of February, 1874, to the twenty-seventh day of February, 1875, continuously.

"That neither James E. Fenton, James D. Fenton, the city of Mexico, nor defendant, paid any taxes on said property from the twenty-seventh day of February, 1844, to the twenty-seventh day of February, 1874.

"If you find either of said propositions to be untrue your verdict must be for defendant."

"2. The possession referred to in the first instruction must have been actual and visible, such as would show that some one owned and controlled the property, and the extent of the land claimed must clearly appear."

"3. Further on the question of possession, the court instructs you that, from the evidence in the case, James Fenton was the legal owner of the land in suit on the twenty-seventh day of February, 1874, and the law presumes that he was in possession, and the burden of proof is on plaintiff to show that he himself was in the possession thereof. Unless, then, plaintiff has shown to

your satisfaction by a preponderance of evidence that he had, continuously, from February 27, 1874, to February 27, 1875, such possession, said first proposition is untrue and your verdict must be for defendant."

"4.   On the second proposition the court instructs you that it is the presumption that defendant, James E. Fenton or James D. Fenton, between February 27, 1844, and February 27, 1874, paid taxes on said property, and it is incumbent on plaintiff to prove to your satisfaction that no one of them paid any taxes on said property for any year during that time, and unless he does so, said second proposition is untrue and your verdict must be for defendant."

To the giving of which instructions the plaintiff objected.   The objection was overruled and exceptions duly saved.

It will be perceived that these instructions call for a construction of the act of the Legislature of the twenty-seventh of February, 1874, now section 3225, *supra.* They also show that both parties tried the case on the theory that the thirty years next preceding the date of the act is the period contemplated by the act, and that the party in actual possession at the date of the act must continue in possession throughout the whole of the year ensuing that date.   It is clear, we think, that the claimant, at the date of the act, and his predecessors in the chain of title under which he claims, within said period of thirty years, as well as the person in actual possession at that date, are the parties contemplated by the act. None others, we imagine, are within its purview.   The claimant of the real estate in question, at that date, as shown by the record, was the said James D. Fenton, and he so continued for more than seven years thereafter, when he conveyed to the present defendant.   The record also shows that the city of Mexico never owned or claimed the property, and is not one of those under whom said Fenton claimed.   By inspection it will be

seen that the requirements of the second proposition, in defendant's first instruction, are broader than the provisions of the act. It imposes on plaintiff a duty not required by the statute. Under it he is required to show, not only that neither the claimant nor those under whom he claims have paid any taxes on said property for all that period of time, but also to prove that the city of Mexico, which never had or claimed any title to said block, never paid any taxes thereon during said period. Not only that, but he is required by this instruction to show that this defendant, also, who never succeeded to the title in question until six years and three months after the expiration of the year within which suit was required to be brought, never paid any such taxes.

Although the jury might believe, from the evidence, that neither the claimant nor those under whom he claimed had paid any taxes for the required period, yet, under this instruction, they could not give the plaintiff a verdict, unless they also believed other facts not required by the act in question. There was evidence tending to show that none of the parties contemplated by the statute had paid any taxes for the required period, and there was no evidence offered to the contrary. The jury, therefore, from all the facts and circumstances in evidence, might, if satisfied, have found for the plaintiff on this point, if they had not been misdirected in this particular. Whether they found against the plaintiff on this account, or on some point in the case where the evidence was conflicting, does not appear and cannot be known. This instruction is misleading and manifestly is not the law.

The fourth instruction on the same proposition, in so far as it tells the jury that " it is the presumption that defendant, James E. Fenton, or James D. Fenton, between February 27, 1844, and February 27, 1874, paid taxes on said property," is both erroneous and mislead-

ing. The law presumes nothing in the premises. It is altogether a matter of proof.

The refusal of plaintiff's fourth instruction, in its present form, might not warrant a reversal, but the jury might well be told that the non-payment of the taxes, as contemplated by the statute, need not be established by direct and positive proof, but may be inferred from the proof of other facts and circumstances, tending to show, with reasonable certainty, that no such taxes were, in fact, paid. The existence of such facts and circumstances is for the plaintiff to show ; their weight and value is for the jury to decide. Under the ruling in the case of *Mansfield v. Pollock*, 74 Mo. 185, it must be held that the plaintiff's possession of the property in question, under the facts in evidence, was a *lawful* possession, within the meaning of said act, or section 3225 of the revision of 1879.

For the errors aforesaid, the judgment of the circuit court on the second count, or ejectment branch of the case is reversed and the cause remanded to be proceeded with in conformity hereto. All concur.